IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENEE LIAS,<br><br>    Plaintiff,<br><br>v.<br><br>COUNTY OF ALAMEDA,<br><br>    Defendant.<br>_____ / | No. C 05-00317 SI<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

    Plaintiff Renee Lias is an African-American woman. Lias worked as a deputy county counsel in the Alameda County Counsel's office from April 28, 2003 until July 30, 2004, when she was laid off. The County rehired Lias on November 7, 2004, and Lias currently works in the County Counsel's Office. This lawsuit arises primarily out of Lias' three month lay off from the County. Lias has sued Alameda County, alleging that she was discriminated against on the basis of her race and sex in violation of Title VII, that her lay-off was retaliatory under Title VII, and that her lay-off constituted wrongful termination in violation of public policy.

    On December 23, 2005, the Court heard oral argument on defendant's motion for summary judgment. Having considered the arguments of counsel and the papers submitted, the Court hereby GRANTS defendant's motion.

**LEGAL STANDARD**

    Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

    In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden

of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. *See* Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

As a general matter, the Court observes that plaintiff's opposition brief is largely devoid of specific details or legal argument in support of her claims. Plaintiff makes numerous factual assertions that are not supported by any citation to the evidence. Plaintiff submitted voluminous exhibits in support of her opposition, yet for the most part the opposition brief does not contain any citations to these documents. In addition, it is often the case that when plaintiff has cited evidence, plaintiff either did not actually submit the evidence to the Court, or the evidence cited does not actually state what plaintiff says it states. It is not the Court's task to "scour the record in search of a genuine issue of triable fact," *Keenan v. Allan*, 91 F.3d 1275, 1278 (9th Cir. 1996), and "it need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could be conveniently found." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).[1]

## DISCUSSION

**1.      Title VII Claims**

---

[1] Defendant has submitted objections to much of the evidence submitted by Lias. To the extent that the Court relies on any of the specific evidence at issue, the Court will address defendant's objections.

2

Lias may establish a *prima facie* case of discrimination by showing that: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she experienced an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *See Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 847 (9th Cir. 2004) (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). The County does not dispute that Lias is a member of two protected classes (female and African-American), or that she was qualified for her position. Instead, the County argues that the various incidents Lias challenges do not constitute adverse employment actions, and that she was not treated less favorably than others outside of her protected class. The County also argues that even if Lias has established a *prima facie* case with respect to any of her claims, the County has submitted undisputed evidence of a legitimate, nondiscriminatory reason for its actions.

**A.    Salary**

   **(1)    Starting Salary**

Lias alleges that the County discriminated against her with respect to her starting salary. Lias alleges that when she was negotiating with Karlsson over her starting salary, he informed her that his offer of $4,290.30 per month was the maximum he could offer, but that Lias later learned that this was untrue and that Karlsson had the discretion to offer her a higher salary. Lias has not actually submitted much of the evidence that she cites.[2]

The Court concludes that Lias has failed to establish a *prima facie* case of discrimination because she has not submitted any evidence that similarly situated employees outside of the protected class were treated more favorably. Although Lias does not even cite this deposition testimony in her opposition, Lias testified that she believed Caucasian employees Ann Hansen, Mary Ellyn Gormley and Robert Gaumer were all paid higher starting salaries. *See* Lias Depo. at 35:14-41:9. However, Lias also testified that Gaumer was an hourly provisional employee while Lias was a salaried employee, and thus Gaumer is not "similarly situated" to Lias.

---

[2] For example, Lias cites Exhibit 18 and pages 43, 95 and 96 of the Eaton-May deposition, none of which were provided to the Court. In addition, Lias cites Exhibit 6 as an email from Karlsson regarding her starting salary, but Exhibit 6 does not contain any such email.

United States District Court
For the Northern District of California

*Id.* Moreover, according to the declaration of Richard Karlsson, Gaumer was paid a starting salary less than Lias. *See* Karlsson Decl. ¶ 12. Lias has not introduced any evidence to rebut the Karlsson declaration.

Similarly, Lias testified that she did not know anything about the circumstances under which Hansen was hired and that she believed Hansen's salary was higher than hers based on "office conversation." Lias Depo. at 36. Hearsay and speculation are not admissible evidence. Moreover, the County has submitted undisputed evidence that Hansen had more seniority than Lias, and thus Hansen and Lias were not similarly situated. *See* Duenas Decl. ¶¶ 6-8. Finally, Lias testified that her only basis for believing that Gormley was paid a higher starting salary than Lias was the fact that Lias saw Gormley's pay stub. *See* Lias Depo. at 36. However, the County has submitted undisputed evidence that Gormley had more seniority than Lias. *See* Duenas Decl. ¶¶ 6-8. Lias also admitted that Gormley had more years of County service than Lias, and that Lias she did not know any of the circumstances under which Gormley was hired. *Id.* Thus, Gormley and Lias were not similarly situated. Because Lias has failed to introduce any evidence that similarly situated employees were treated more favorably, the Court concludes she has failed to establish a *prima facie* case. *See Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003). Accordingly, the Court GRANTS summary judgment in favor of the County on this claim.[3]

### (2) Salary "Disparity"

Plaintiff's claim concerning a salary disparity is based in part on her claim concerning her starting salary, addressed *supra*, and her claim concerning retroactive pay, addressed *infra*. Lias also alleges that after she was laid off, the County made her an offer to return to work on a contract basis at an hourly rate of at least $15.00 per hour less than the rate paid to Caucasian contract attorneys. In support of these allegations, Lias cites her declaration. However, Lias' declaration does not contain any information whatsoever about this offer or the rate paid to other contract attorneys. Because Lias has not introduced any evidence in support of this claim, Lias has failed to establish a *prima facie* case, and the Court GRANTS summary judgment in favor of

---

[3] The Court notes that Lias alleges that Karlsson gave Gormley an earlier start date than she was given. The evidence Lias cites does not support that assertion; instead, Karlsson testified that Gormley was already working as a provisional employee and thus her start date was determined by when she began work as a provisional employee. Karlsson Depo. at 50.

4

the County on this claim.[4]

### B. Conference

In February 2004, Lias asked to attend an MCLE conference in San Francisco. Although her request was initially denied, after she complained she was allowed to attend the conference. Lias alleges that her supervisor's initial denial of her request was discriminatory, although she has not submitted any evidence suggesting race or sex-based discrimination.

Defendant argues, *inter alia*, that because Lias was allowed to attend the conference, she did not experience an adverse employment action. The Court agrees and finds *Brooks v. City of San Mateo*, 229 F.3d 917 (9th Cir. 2000), instructive. In *Brooks*, the plaintiff's schedule was changed and her request for vacation leave was denied. After she complained about these actions, her employer accommodated her preferences by allowing her to switch shifts and vacation dates with other employees. *Id.* at 930. The court held that the plaintiff was not subjected to an adverse employment action because the actions were not final. *Id.* Likewise, in this case, after Lias complained about not being allowed to attend the conference, her supervisor allowed her to attend the conference. The Court concludes that Lias has not experienced an adverse employment action, and thus has failed to establish a *prima facie* case of discrimination with respect to this claim. Accordingly, the Court GRANTS summary judgment in favor of the County on this claim.

### C. Retroactive Pay

In November 2003, Lias' supervisor Denise Eaton-May left the office and became the Acting Director of the County's Human Resources Department. When Ms. Eaton-May left the office, her evaluations of plaintiff and several other employees were not processed by the accounting staff in time for the Human Resources and Payroll Departments to issue checks for the appropriate pay period. Duenas Decl. ¶ 15. By the time the papers were processed, there was a delay of two pay periods, or one month, in effectuating a five percent pay increase for Lias. *Id.* According to the County, there were several employees in addition to Lias

---

[4] The Court also notes that even if Lias had established a *prima facie* case, Lias has not introduced any evidence to rebut the County's evidence of a legitimate, nondiscriminatory reason for the hourly rate that the County offered Lias. The County submitted the declaration of Calvin James, Assistant County Counsel for the County of Alameda, which states that prior to Lias applying for the contract position, the office set a maximum salary for any temporary contractor due to budgetary constraints. *See* James Decl. ¶¶ 6-7.

5

whose paperwork was not processed in a timely manner, including Ann Hansen, a Caucasian female. *Id.*; Karlsson Decl. ¶ 16. None of these employees received retroactive pay increases. Duenas Decl. ¶ 15; Karlsson Decl. ¶ 17.

Although retroactive pay was formerly available in the County, in December 2002 the County adopted a new human resources and payroll system called Alcolink. Duenas Decl. ¶ 14. The last person in the County Counsel's office to receive retroactive pay was Rosemarie Kwiatowski. *Id.* Ms. Kwiatowski received retroactive pay following the transition to Alcolink, but according to the County, the processing required extensive additional work for the staffs of both the County Counsel's office and the county-wide Human Resources Service to reconcile the payments within the system. *Id.* After Ms. Kwiatowski was granted retroactive pay and before Ms. Lias' increase was delayed, the Office was advised by the Human Resources Department that retroactive pay would no longer be granted. *Id.* This decision applied to all County employees regardless of race or gender. *Id.*

The County offered Lias three options to compensate her for the late payment of the step increase. Karlsson Decl. ¶ 18, Duenas Decl. ¶ 16. Lias accepted one of the three options, and the County complied. *Id.* Lias informed Karlsson that the matter had been resolved to her satisfaction. Karlsson Decl. ¶ 18.

The County contends that the denial of retroactive pay does not constitute an adverse employment action because the matter was ultimately resolved, and because Lias has not shown that similarly situated employees outside of her protected class received retroactive pay. In addition, the County contends that even if Lias has established a *prima facie* case, Lias has not rebutted the County's legitimate, nondiscriminatory reason for the denial of retroactive pay.

Lias' opposition does not address any of these arguments, nor does Lias advance any arguments or cite any evidence showing that she has established a *prima facie* case. Instead, Lias simply states that Karlsson told her that obtaining retroactive pay is "impossible," and she cites Eaton-May's deposition testimony for the proposition that Eaton-May states that retroactive pay can be done manually. However, the evidence cited by Lias does not support these assertions: the email from Karlsson states, "I will look into it, but I have been told it is impossible to do retroactive pay increases," Pl's Appendix, Ex. 8, and none of the excerpts of Eaton-May's deposition testimony contains a statement that retroactive pay can be done manually.

6

The Court concludes that Lias has failed to establish a *prima facie* case of discrimination with respect to the denial of retroactive pay. Lias does not dispute that in lieu of paying her retroactive pay, the County offered her three options and that she selected one of them. For all of the reasons discussed in subsection B *supra*, because the County ultimately resolved the issue concerning the retroactive pay, the Court concludes that Lias did not experience an adverse employment action. *See Brooks*, 229 F.3d at 930. In addition, Lias has not introduced any evidence showing that similarly situated employees outside her protected class were treated differently, and in fact the County has submitted undisputed evidence that other employees, including a Caucasian woman, were treated the same way with respect to the delay in processing evaluations and the denial of retroactive pay. Finally, even if the Court concluded that Lias had established a *prima facie* case, the Court concludes that Lias has not introduced any evidence to show that the County's legitimate, nondiscriminatory reason for denying retroactive pay – namely that manual processing of retroactive pay was too time-consuming – was a pretext for discrimination. Accordingly, the Court GRANTS summary judgment in favor of the County on this claim.

### D. Schedule

Lias alleges that Karlsson "unilaterally" changed her work schedule in May 2004. However, aside from submitting her own declaration stating that "Karlsson unilaterally changed my work hours," Lias has not submitted any evidence showing that Karlsson changed her work schedule, nor has she provided any details regarding how he changed her work schedule. *See* Lias Decl. ¶ 3. Lias has submitted an email exchange between her and Karlsson in which he asked all of the deputy attorneys to provide him with their "core hours," and Lias responded that her "core hours" were Monday - Wednesday from 8:30 a.m. to 5:30 p.m., and Thursday - Friday from 8:00 a.m. to 5:00 p.m. *See* Pl's Appendix, Ex. 11. Lias asserts that a Caucasian male co-worker was allowed to leave at 4:00 p.m. to pick up his children, and that another Caucasian female co-worker was allowed to arrive at 9:00 a.m. and leave at 5:00 p.m. while taking a one hour lunch. Lias asserts, "[i]n sum, everyone was allowed to come and go as they want[ed], but Karlsson continued to micromanage Lias, including her work hours and break." Opposition at 9.

The County contends that Lias has failed to establish a *prima facie* case because she has not submitted

any evidence that Karlsson ever changed Lias' work hours. The Court agrees that Lias has failed to establish that she was subjected to an adverse employment action. Although a change in one's work schedule could constitute an adverse employment action, Lias has not submitted any evidence about how her schedule was changed, or showing that the change was adverse. Instead, as noted *supra*, Lias simply states in her declaration that "Karlsson unilaterally changed my work hours." Without any details whatsoever, it is impossible for the Court to determine whether the change was adverse, and whether similarly situated employees outside the protected class were treated more favorably. Although a plaintiff's burden in establishing a *prima facie* case is not a heavy one, a plaintiff opposing a summary judgment motion must submit affidavits which "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. Proc. 56(e). Plaintiff has failed to do so, and accordingly the Court GRANTS summary judgment in favor of the County on this claim.

### E. "Micromanaging"/Not Being Allowed to Take Breaks

Lias alleges that Karlsson "micromanaged" her, and that on one occasion he sent her an email advising her that county counsel were not entitled to take breaks. Lias does not provide any examples of how Karlsson "micromanaged" her aside from this email about taking breaks. Lias's opposition asserts, without any factual support, that at the time she was counseled about taking a break, four other co-workers were also out on break. Lias has submitted copies of the email correspondence between herself and Karlsson. Pl's Appendix, Ex. 13; *see also* Karlsson Decl. Ex. 6. Lias' opposition does not assert that Karlsson denied her a break on any other occasion, nor has Lias submitted any evidence regarding any other incidents. Lias also alleges that Eaton-May testified in her deposition that the County does not have a policy concerning breaks; however, Lias did not submit the deposition pages she cites.

The County contends that Lias cannot establish a *prima facie* case because she has not shown that she was subject to an adverse employment action or that similarly situated employees were treated more favorably. The County has submitted the Declaration of Richard Karlsson in which he states that after he emailed Lias about not taking breaks, he emailed the other division supervisors requesting them to counsel their deputies about taking breaks. *See* Karlsson Decl. ¶ 21 and Ex. 6.

8

The Court concludes that Lias has failed to establish a *prima facie* case. Assuming without deciding that being counseled about not taking breaks constitutes an adverse employment action, Lias has not introduced any evidence whatsoever showing that similarly situated employees outside the protected class were treated more favorably, nor has she introduced any evidence giving rise to an inference of discrimination. Indeed, the evidence submitted by the County suggests that similarly situated employees were treated the same because after Karlsson emailed Lias about taking breaks, he emailed the other division supervisors and instructed them to counsel their deputies about taking breaks. *Id.* Accordingly, the Court GRANTS summary judgment in favor of the County on this claim.

### F.   Sick Leave

Lias alleges, without any evidentiary support, that she was forced to go on stress leave from approximately May 24, 2004 to June 14, 2004, as a result of the racial discrimination and retaliation she experienced. Lias alleges that after she returned from stress leave she was "ostracized," and that Karlsson refused to allow her an opportunity to report to another manager.

It is unclear from Lias' opposition what claim, if any, she asserts concerning her sick leave. With respect to being "ostracized" upon her return, the Ninth Circuit has held that "mere ostracism" by co-workers does not constitute an adverse employment action. *See Strother v. Southern California Permanente Med. Gp.*, 79 F.3d 859, 869 (9th Cir. 1996). Lias has not submitted any evidence in support of her allegation that Karlsson refused to allow her to report to another manager, much less establish a *prima facie* case with respect to any such refusal. Indeed, Karlsson submitted an undisputed declaration stating that after Lias returned from her leave and until she was laid off, she was supervised by another assistant, Jeanne Nadel. *See* Supp. Karlsson Decl. ¶ 3. Accordingly, the Court GRANTS summary judgment in favor of the County on this claim.[5]

---

[5] The Court notes that the County moved for summary judgment on Lias' claim that she was given more burdensome work assignments. (Lias' complaint does not allege such a claim, but Lias' interrogatory responses made such a contention). Lias did not address this claim in the argument section of her brief, although she does mention her work assignments in the statement of facts portion of her brief. Accordingly, the Court concludes that to the extent Lias ever asserted such discrimination, she has abandoned it by failing to advance any legal argument in support this claim.

Moreover, even if Lias had not abandoned this claim, the Court concludes that the County would be

**G.     Retaliation**

In order to establish a prima facie case of retaliation, a plaintiff must show: (1) that she engaged in protected activity; (2) her employer subjected her to an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. *See Ray v. Henderson*, 217 F.3d 1234, 1239 (9th Cir. 2000). The Court concludes that Lias has established a *prima facie* case of retaliation because she filed a complaint with the County alleging discrimination in May 2004, and she was laid off a month later.

Once a plaintiff has made out a *prima facie* retaliation claim, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *See Manatt v. Bank of America*, 339 F.3d 792, 800 (9th Cir. 2003). Here, the County contends that Lias was laid off because of budget cuts and because she had the least seniority of all of the deputy county counsel in the office. The County has submitted evidence that in April of 2004, the County Board of Supervisors issued a mandate requiring a 28% County general fund budget reduction. *See* Duenas Decl. ¶ 17; Karlsson Decl. ¶ 29; Winnie Decl. ¶ 12, Ex. 2. This meant that the County Counsel's office was required to reduce 28% of its County general fund, or approximately $550,000. *See* Karlsson Decl. ¶ 29; Winnie Decl. ¶ 12. The County has submitted evidence that in addition to the general budget reduction, on May 6, 2004, the Office was advised by email that the County Administrative Office, which funded the Advocacy Division, would reach its 28% general fund budget cut, in part, by reducing its funding contribution to the County Counsel's Office by approximately $243,000.

---

entitled to summary judgment. Lias alleges that she was assigned more work than her Caucasian counterparts, and she cites her deposition testimony in which she states that she was assigned both personnel and litigation cases, while two other employees were given either litigation or personnel. *See* Lias Depo. at 29-31. The Court concludes that Lias has established a *prima facie* case of discrimination, and thus the burden shifts to the County to offer a legitimate, nondiscriminatory reason for the work assignments. *See Fonseca*, 374 F.3d at 849. Here, the County has submitted evidence that office policy requires deputies to be assigned a variety of cases, that no attorney is guaranteed any specific type of case, and that Lias was assigned cases based upon the needs of the office and consistent with her existing assignments. *See generally* Karlsson Decl., Winnie Decl., and James Decl. In addition, the Karlsson declaration states that he never considered race or gender when assigning work to Lias. *See* Karlsson Decl. ¶ 6. Because the County has offered evidence of a legitimate, nondiscriminatory reason for Lias' work assignments, the burden shifts back to her to show that the reason given is a pretext. *See Fonseca*, 374 F.3d at 849. "A plaintiff can prove pretext either (1) indirectly, by showing that the employer's proferred explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) directly, by showing unlawful discrimination more likely motivated the employer." *Lyons v. England*, 307 F.3d 1092, 113 (9th Cir. 2002) (internal quotations omitted). Here, Lias has not even attempted to show pretext. Moreover, Lias' deposition testimony does not contain any admissible evidence to either directly or indirectly suggest pretext, and indeed, Lias admitted during her deposition that she had no knowledge of the criteria used by her supervisors when making assignments. *See* Lias Depo. at 31-32.

10

*See* Duenas Decl. ¶ 18; Karlsson Decl. ¶ 29; Winnie Decl. ¶ 13, Ex. 3.  The combined impact of the budget cuts totaled more than $793,000 for the County Counsel's Office.  *See* Winnie Decl. ¶ 14.

According to the declaration and supporting exhibits submitted by Richard Winnie, County Counsel for the County of Alameda, Winnie decided to reduce staffing by three deputy counsel positions and one paralegal position in order to achieve the necessary budget cuts.  *Id.*  Layoff of County employees is governed by the County Civil Service Rules, and County departments do not have discretion in the application of these rules.  *Id.* at ¶ 15.  In order to reduce three deputy county counsel positions, the Office first eliminated the single unfilled deputy county counsel position in the Office at the time; then eliminated the single provisional deputy county counsel position in the Office at the time (held by a Caucasian male, Robert Gaumer); and then eliminated the deputy county counsel position held by the person with the lowest seniority, which was Lias.  *Id.* at ¶ 15; Karlsson Decl. ¶ 31.  Reductions and layoffs of approximately 100 positions were made in the County government as a whole due to the budget cuts.  *See* Winnie Decl. ¶ 20.  The Court concludes that the County has submitted evidence of a legitimate, non-discriminatory reason for laying off Lias.

Because the County has articulated a legitimate, non-discriminatory reason for laying off Lias, the burden shifts back to her to show "direct or specific and substantial circumstantial evidence of pretext." *Manatt*, 339 F.3d at 801.  Lias alleges that when she and Gaumer were laid off, Karlsson provided Gaumer with assistance in securing a job at a law firm which was on the County's outside defense panel and which performed tort work for the County, and that Karlsson allowed Gaumer to take his case load with him to this firm.  Lias alleges that no one at the County provided such assistance to Lias, and that this disparate treatment raises a triable issue of fact as to the motive behind her lay-off.

Lias has not submitted any evidence in support of these allegations.[6]  Moreover, the County has submitted undisputed evidence that Karlsson was not involved in the decision to lay off Lias, and that it was Winnie who made the decision to reduce personnel positions within the Office in order to meet the budget cuts. *See* Winnie Decl. ¶¶ 12-20; Karlsson Decl. ¶ 27; Karlsson Supp. Decl. ¶ 4.  The County has also submitted the Karlsson declaration, which Lias has not disputed with any evidence, which states that Karlsson did not

---

[6] Lias cites the Karlsson and Eaton-May's depositions in support of these allegations, but has not provided the Court with any of the pages cited.

actively help Gaumer find a position after he was laid off; that Karlsson provided a reference for Gaumer in response to call from the law firm that Gaumer applied to; and that after Gaumer obtained his job, a decision was made, in conjunction with the County's Risk Management department, to transfer the tort cases previously handled by Gaumer to the law firm, as opposed to other outside counsel on the County's defense panel. *See* Karlsson Decl. ¶¶ 30-31. Karlsson's declaration states that these cases could not have been kept in-house following the lay off because of the reduced staffing in the Advocacy division. *Id.* at ¶ 31. Karlsson also states that Lias never requested his help in finding or securing outside employment, nor did she make any request to continue handling tort or other cases after she was laid off. *Id.* at ¶ 32.

Lias also asserts that the budget cuts were not the real reason she was laid off because the County continued to hire new deputy attorneys. Lias alleges that a Caucasian male attorney was hired from the Roland Law Firm; she does not submit any evidence in support of this allegation. Lias also alleges, without any evidentiary support, that at the time of the lay-off Nedra Shawler was an attorney assigned to special projects, with the implication that the County could have laid off Ms. Shawler instead of Lias.[7]

Lias also alleges that after Lias was laid off a Caucasian male, Brian Washington, was hired to lead the Advisory-Construction and Land Use Division. As an initial matter, the Court notes that Washington testified in his deposition that he is bi-racial and considers himself to be black. *See* Pl's Appendix, Ex. 3, Washington Depo. at 16:1-2. More importantly, aside from submitting evidence that Washington was hired sometime after Lias was laid off, Lias has not submitted any "direct or specific and substantial circumstantial evidence of pretext." *Manatt*, 339 F.3d at 801. The County has submitted undisputed evidence that Washington was hired after Eaton-May's position became available in August 2004 when Eaton-May was appointed as the Director of Human Resource Services. *See* Winnie Decl. ¶¶ 2, 17; Supp. Duenas Decl. ¶ 5. Winnie's declaration also states that when Eaton-May left the County Counsel's Office to become the Acting Director of Human Resource Services, Ms. Eaton-May did not resign her position at the County Counsel's Office; that the County Counsel's Office was required to maintain her position in the budget; and that the Office was not

---

[7] The County submitted evidence, which Lias failed to dispute, that Ms. Shawler, an African-American female, was working on a project funded by the Department of Social Services. *See* James Decl. ¶ 4. According to the County, as a special project attorney Shawler was in a different classification than Lias and funding for her special project was not affected by the County's budget deficit. *Id.*

12

allowed to fill Eaton-May's position until she resigned from it. *See* Winnie Decl. at ¶ 2; Supp. Duenas Decl. ¶ 5.

The County also submitted evidence that the Assistant County Counsel position which vacated by Eaton-May and filled by Washington, is in a different classification specification than the position held by Lias, which was Deputy County Counsel. *See* Winnie Decl. at Ex. 1; *see generally* Supp. Duenas Decl. It is undisputed that when Lias was laid off, she was working as a Deputy County Counsel and that she had the least seniority of all Deputy County Counsel in the office; moreover, Lias has not submitted any evidence to show that she was qualified for the Assistant County Counsel position vacated by Eaton-May.

Lias also suggests that the County could have eliminated more paralegals rather than eliminating her deputy counsel position. Even if this is true, this fact does not constitute "direct or specific and substantial circumstantial evidence of pretext." *Manatt*, 339 F.3d at 801. Moreover, the County has submitted undisputed evidence that it would have been required to eliminate three clerical staff to achieve the cost savings of eliminating one attorney position. *See* Winnie Decl. ¶ 17. Similarly, Lias asserts, without any evidentiary support, that instead of laying her off the County could have offered her part-time assignments, reduced the amount of work assigned to outside law firms, and/or placed her in the position of another attorney who was at the time on extended leave pursuant to the Family Medical Leave Act. Lias does not submit any evidence in support of these assertions, and indeed the County has submitted undisputed evidence showing that the County could not have taken these actions. *See generally* Karlsson Supp. Decl.

Lias also disputes the extent of the budget deficit, alleging that the Office only needed to cut $243,000. However, Lias has failed to introduce any evidence disputing the County's evidence showing that the Office needed to reduce its budget by more than $793,000.

Finally, Lias asserts that after she sought worker's compensation benefits during her sick leave in 2004, she was ostracized, Karlsson refused to allow her to report to another manager, and she was laid off. As discussed *supra*, Lias has not submitted any evidence in support of these allegations. Lias has failed to establish a *prima facie* case of retaliation with respect to seeking worker's compensation benefits because she has not shown that she suffered any adverse employment actions as a result of seeking such benefits.

For all of the foregoing reasons, the Court hereby GRANTS summary judgment in favor of the County

13

on Lias' retaliation claim.

### H. Hostile Work Environment

Lias' opposition suggests that she is asserting a claim for hostile work environment based on Karlsson's behavior and conduct, although no such claim is alleged in the complaint. *See* Pl's Opposition at 15:14-18. However, aside from making this assertion, Lias does not provide any details or advance any legal argument in support of this claim. In an abundance of caution, the Court will assume that Lias intends to assert such a claim.

In the Ninth Circuit, courts employ a totality of the circumstances test in determining whether a plaintiff has established a hostile work environment, considering factors such as: "[the] frequency of discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." *Nichols v. Azteca Rest. Enters. Corp.*, 256 F.3d 864, 872 (9th Cir. 2001). To constitute harassment, the workplace must be both subjectively and objectively abusive. *See Brooks*, 229 F.3d at 923.

Viewing the evidence in the light most favorable to Lias, the Court concludes that Lias has failed to submit evidence raising a genuine question of material fact regarding whether a reasonable person of plaintiff's race or sex would find the workplace so objectively and subjectively racially hostile as to create an abusive working environment. *See McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004). Lias does not allege that Karlsson or anyone else ever made a racist or sexist remark. Instead, as discussed *supra*, Lias alleges that he "micromanaged" her, changed her schedule, initially denied her request to attend a conference, denied her retroactive pay, and set her salary lower than Caucasian employees. However, as the Court has already noted, Lias has failed to establish a *prima facie* case of discrimination with respect to any of these claims. Lias has not introduced any evidence of a subjectively and objectively abusive environment. Accordingly, the Court GRANTS summary judgment to the County on this claim.[8]

---

[8] To the extent Lias relies on the Declaration of Sandra Smith in support of this claim (which is unclear given the off-hand manner in which plaintiff mentions her hostile work environment claim), the Court concludes that Smith's declaration is inadmissible because the statements contained in her declaration lack foundation, are speculative, consist of improper lay opinion, and are based on hearsay.

**2.     Wrongful Termination in Violation of Public Policy**

California state law permits a claim of wrongful termination in violation of public policy where termination of employment occurs in violation of a fundamental state policy delineated in constitutional or statutory provisions. *See Freund v. Nycomend Amersham*, 347 F.3d 752, 758 (9th Cir. 2003). Plaintiff asserts that the County wrongfully terminated her employment in violation of the public policies delineated in the Fair Employment and Housing Act prohibiting race discrimination and retaliation, and in California Labor Code § 132(a), which prohibits an employer from discriminating against an employee for exercising her rights under the worker's compensation laws. Because the Court has concluded that Lias has failed to raise a triable issue of fact as to whether the County discriminated against her or retaliated against her, the Court hereby GRANTS summary judgment in favor of the County on her wrongful termination claim.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant's motion for summary judgment. [Docket No. 66].

Dated: January 2, 2006

SUSAN ILLSTON
United States District Judge